**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| STEVEN WEISS, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR VIOLATIONS** |
| | ) | **OF THE FEDERAL SECURITIES** |
| IMMUNOME, INC., MICHAEL RAPP, | ) | **LAWS** |
| RICHARD BARON, JOHN LAMATTINA, | ) | |
| MICHAEL LEFENFELD, PURNANAND D. | ) | **JURY TRIAL DEMANDED** |
| SARMA, FRANKLYN G. PRENDERGAST, | ) | |
| and PHILIP WAGENHEIM, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Steven Weiss ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder action brought by Plaintiff against Immunome, Inc. ("Immunome" or the "Company") and the members of Immunome's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to merge Immunome with Morphimmune Inc. ("Morphimmune") (the "Proposed Transaction").

2. On June 29, 2023, Immunome, Immunome's wholly-owned subsidiary Ibiza Merger Sub, Inc. ("Merger Sub") and Morphimmune entered into an Agreement and Plan of Merger and Reorganization (the "Merger Agreement"). Pursuant to the terms of the Merger

Agreement, Immunome and Morphimmune will combine, with Morphimmune common stock converted into the right to receive 0.3042 shares of Immunome common stock for each share of Morphimmune common stock. Upon closing of the Proposed Transaction, Immunome's and Morphimmune's current stockholders will own approximately 55% and 45% of the combined company, respectively.

3. Under the Merger Agreement, Immunome is required to issue additional shares of Immunome common stock (the "Share Issuance"). As a Nasdaq listed company, Immunome is required by Nasdaq listing rules to secure shareholder approval before issuing 20% or more of its outstanding common stock and before issuing securities that will result in a "change of control" of the company. Thus, the Proposed Transaction is contingent upon Immunome shareholders voting to approve the proposed Share Issuance.

4. On August 28, 2023, the Board authorized the filing of the materially incomplete and misleading Form 424B3 Prospectus (the "Prospectus") with the SEC. Specifically, the Prospectus, which recommends that Immunome stockholders vote their shares in favor of the Share Issuance and Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) Immunome's, Morphimmune's and the combined company's financial projections; and (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor Stifel, Nicolaus & Company, Incorporated ("Stifel").

5. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Immunome stockholders need such information in order to make a fully informed decision in connection with the Share Issuance and Proposed Transaction.

6. The special meeting for Immunome stockholders to vote on the Share Issuance and Proposed Transaction is currently scheduled for September 29, 2023. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Immunome's other shareholders to make an informed decision whether to vote their shares in favor of the Share Issuance and Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

8. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper under 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

10. Plaintiff is, and has been at all relevant times, the owner of shares of Immunome common stock.

11. Defendant Immunome is a Delaware corporation, with its principal executive offices located at 665 Stock Drive, Suite 300, Exton, Pennsylvania 19341. Immunome's shares trade on the Nasdaq Capital Market under the ticker symbol "IMNM."

12. Defendant Michael Rapp has been Chairman of the Board and a director of the Company at all relevant times.

13. Defendant Richard Baron has been a director of the Company at all relevant times.

14. Defendant John LaMattina has been a director of the Company at all relevant times.

15. Defendant Michael Lefenfeld has been a director of the Company at all relevant times.

16. Defendant Purnanand D. Sarma has been President, Chief Executive Officer, and a director of the Company at all relevant times.

17. Defendant Franklyn G. Prendergast ("Prendergast") has been a director of the Company at all relevant times. Defendant Prendergast is also a director of Morphimmune.

18. Defendant Philip Wagenheim has been a director of the Company at all relevant times and previously served as the Company's interim Chief Executive Officer from January 2017 to March 2017.

19. Defendants identified in paragraphs 12-18 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

20. Immunome is a biopharmaceutical company utilizing a proprietary human memory B cell platform to discover and develop antibody therapeutics to improve patient care, with a primary focus area in oncology. Immunome is currently advancing its lead oncology program, IMM-ONC-01, an antibody directed at interleukin 38 ("IL-38"), a novel immune modulator for the treatment of various solid tumors, and identifying novel target-antibody pairs under the Company's collaboration agreement with AbbVie Global Enterprises Ltd. IMM-ONC-01 is

4

currently in preclinical development stage. Immunome plans to submit its Investigational New Drug application for the IMM-ONC-01 program with the U.S. Food and Drug Administration in the first quarter of 2024.

**The Proposed Transaction**

21. On June 29, 2023, Immunome announced the Proposed Transaction, stating, in relevant part:

> EXTON, PA. and SEATTLE, WA. (June 29, 2023) Immunome (Nasdaq: IMNM), a biopharmaceutical company utilizing a proprietary human memory B-cell platform to discover and develop antibody therapeutics to improve patient care, and Morphimmune, a private biotechnology company focused on developing targeted oncology therapeutics, today announced that they have entered into a definitive merger agreement.
>
> The Boards of Directors of both companies have approved the all-stock transaction. The combined company, which will operate as Immunome and retain the same ticker symbol, will be headquartered in Seattle, WA and will maintain cost-efficient research lab facilities in Exton, PA and West Lafayette, IN.
>
> Clay B. Siegall, Ph.D., who was appointed CEO and President of Morphimmune earlier this year, will serve as the CEO, President, and Chairman of the Board of Directors of Immunome.
>
> Dr. Siegall previously served as the CEO and President of Seagen, Inc., which he co-founded in July 1997. Under his nearly 25 years of leadership, Seagen became an industry leader in ADC therapeutics, earned FDA approvals for four cancer therapies, and grew to over $2 billion in annual revenue. During his tenure, he raised well over $1 billion of financing for Seagen from public and private markets and oversaw the company's acquisition of Cascadian Therapeutics. In March of 2023, Pfizer, Inc. agreed to purchase Seagen for $43 billion.
>
> "Clay Siegall's track record of drug development and shareholder value creation is exceptional, and we are honored to have him serve as Chairman and CEO after the merger closes," said Michael Rapp, Immunome Board Chairman. "By building on the accomplishments of Purnanand Sarma and the Immunome team, Clay will be positioned to develop best-in-class targeted cancer therapies across multiple modalities."
>
> The companies also announced an oversubscribed private placement investment of $125 million with participation from Enavate Sciences, EcoR1 Capital, Redmile Group, Janus Henderson Investors, Avidity Partners, Woodline Partners LP, and

other leading institutional investors. In connection with the PIPE, James P. Boylan, Chief Executive Officer of Enavate Sciences, will be appointed to the Board of Directors of Immunome. Both the merger and private placement are expected to close by the end of Q4 2023.

The investment will be used to continue development of the lead assets in Immunome's combined pipeline, to continue to advance the company's platforms, and for general working capital purposes. The combined pipeline includes a novel anti-IL-38 mAb derived from Immunome's discovery engine, as well as a folate receptor-targeted TLR7 agonist (FA-TLR7a) and FAP-targeted radioligand ($^{177}$Lu-FAP). The company expects to submit three INDs within 18 months following the closing, including the anti-IL-38 program, which is now slated for submission in Q1 2024. Additionally, the company will be well-positioned to explore opportunities for strategic in-licensing and further acquisitions.

"This is the first step in establishing a preeminent oncology company," said Dr. Siegall. "Combining Morphimmune's Targeted Effector Platform with Immunome's Discovery Engine will enable us to pursue novel targets and modalities, unlocking substantial synergistic value."

"Given the quality of our science, the expertise of our combined leadership team, and the strengthened cash position, I am extremely enthusiastic about our potential to reduce the suffering and loss of life caused by cancer."

"We founded Morphimmune to realize the extraordinary potential of Professor Philip S. Low's scientific vision, which builds on decades of work at Purdue University. Our subsequent investments in the company, our engagement with Clay Siegall as CEO and now the anticipated merger are evidence of that potential," said Isaac Barchas, Morphimmune Founding Board Chairman and Research Bridge Partners Co-Founder and CEO. Barchas will serve on Immunome's Board of Directors following the merger.

**About the Proposed Transaction**

Immunome will acquire Morphimmune through a reverse subsidiary merger that is intended to be a tax-free reorganization. Stockholders of Morphimmune will receive common stock of Immunome based on a fixed exchange ratio applicable to the specific class and series of Morphimmune capital stock and outstanding options to acquire Morphimmune common stock will be assumed by Immunome. At the effective time of the merger, prior to giving effect to the private placement, securityholders of Immunome will own approximately 55% of the combined company and securityholders of Morphimmune will own approximately 45% of the combined company on a fully diluted basis, excluding out-of-the-money securities and the inducement grant to Dr. Siegall discussed below. The closing of the transaction is subject to customary closing conditions, including the effectiveness of the registration statement on Form S-4 to be filed by Immunome, and the receipt

of required stockholder approvals from Immunome and Morphimmune stockholders. In conjunction with execution of the merger agreement, Dr. Siegall entered into an employment agreement with Immunome that will become effective upon closing. In connection with the entry into the employment agreement, the Immunome Board of Directors approved a stock option grant to Dr. Siegall as an inducement material to Dr. Siegall entering into employment with Immunome in accordance with Nasdaq Listing Rule 5635(c)(4). The stock option provides for the purchase of up to 2,137,080 shares of Immunome common stock at a price of $5.91 per share, the closing price per share of Immunome common stock as reported by Nasdaq on June 28, 2023, the date of grant, and vests over four years, with 25 percent of the shares vesting on the first anniversary of closing of the merger, and the remainder vesting ratably at the end of each subsequent month thereafter, subject to Dr. Siegall's continued employment with Immunome through the applicable vesting dates.

Stockholders of Immunome holding approximately 20% of the voting stock of Immunome executed voting and support agreements pursuant to which they agreed to vote in favor of the issuance of shares in the merger and related matters and stockholders of Morphimmune holding approximately 70% of the voting stock of Morphimmune executed voting and support agreements pursuant to which they agreed to vote in favor of the adoption of the merger agreement and the merger and other related matters.

Following the proposed merger, the board of directors of the combined company will be comprised of seven members: two selected by Morphimmune, who will initially be Dr. Siegall and Mr. Barchas; one selected by Immunome, who will initially be Philip Wagenheim; and four additional independent directors, to be mutually agreed, one of whom will initially be Mr. Boylan.

Stifel is serving as financial advisor and Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. is serving as legal counsel to Immunome. TD Cowen is serving as financial advisor and Cooley LLP is serving as legal counsel to Morphimmune.

In connection with the private placement, TD Cowen and SVB Securities are serving as placement agents, and Wedbush Securities Inc. is serving as a strategic advisor.

**The Materially Incomplete and Misleading Prospectus**

22. On August 28, 2023, the Board caused to be filed a materially incomplete and misleading Prospectus with the SEC. The Prospectus, which recommends that Immunome stockholders vote their shares in favor of the Share Issuance and Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially

7

misleading information, concerning: (i) Immunome's, Morphimmune's and the combined company's financial projections; and (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Stifel.

*Material Misrepresentations and/or Omissions Concerning Immunome's, Morphimmune's and the Combined Company's Financial Projections*

23. The Prospectus fails to disclose material information concerning the financial projections for Immunome, Morphimmune and the combined company.

24. For example, with respect to the "Immunome Projections" and "Morphimmune Projections," the Prospectus fails to disclose all line items underlying the calculation of: (i) EBITDA; and (ii) Unlevered Free Cash Flow.

25. Additionally, the Prospectus sets forth that in determining to enter into the Proposed Transaction, the Board considered "the potential value of the combined company following the Merger, considering the combined company's expected technology synergies, pipeline of potential clinical assets and platform to generate additional product candidates, financial resources from the PIPE Financing and potential access to capital and enhanced ability to develop and commercialize oncology products." Prospectus at 92. The Prospectus, however, fails to disclose a quantification of the potential value of the combined company and the synergies the Board expects to result from the Proposed Transaction.

*Material Misrepresentations and/or Omissions Concerning Stifel's Financial Analyses*

26. The Prospectus fails to disclose material information concerning Stifel's financial analyses.

27. With respect to Stifel's *Discounted Cash Flow Analysis* of Immunome and Morphimmune, the Prospectus fails to disclose a quantification of: (i) the terminal values for each company; (ii) the inputs and assumptions underlying the discount rate range of 11% to 13%; (iii)

the Company's and Morphimmune's respective net operating losses generated since 2017; and (iv) the exercisable shares of Immunome and fully-diluted shares of Morphimmune utilized by Stifel in the analysis.

28. The Prospectus also fails to disclose a summary of any comparable companies, precedent transactions, and/or premiums paid analysis prepared by Stifel and/or reviewed by the Board in connection with its decision to enter into the Merger Agreement.

29. In sum, the omission of the above-referenced information renders statements in the "Certain Immunome and Morphimmune Unaudited Financial Projections," "Immunome Reasons for the Merger," and "Opinion of Immunome's Financial Advisor" sections of the Prospectus materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Immunome will be unable to make a sufficiently informed decision in connection with the Share Issuance and Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Immunome**

30. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

31. The Individual Defendants disseminated the false and misleading Prospectus, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Immunome is liable as the issuer of these statements.

32. The Prospectus was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Prospectus.

33. The Individual Defendants were at least negligent in filing the Prospectus with these materially false and misleading statements.

34. The omissions and false and misleading statements in the Prospectus are material in that a reasonable stockholder will consider them important in deciding how to vote on the Share Issuance and Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Prospectus and in other information reasonably available to stockholders.

35. The Prospectus is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

36. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

37. Because of the false and misleading statements in the Prospectus, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

38. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

39. The Individual Defendants acted as controlling persons of Immunome within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Immunome and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Prospectus, they had

the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

40. Each of the Individual Defendants was provided with or had unlimited access to copies of the Prospectus alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

41. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Prospectus contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Prospectus.

42. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

43. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Immunome, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Prospectus;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Prospectus that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 7, 2023                           LONG LAW, LLC

                                                   By  */s/ Brian D. Long*
                                                       Brian D. Long (#4347)
                                                       3828 Kennett Pike, Suite 208
**OF COUNSEL:**                                        Wilmington, DE 19807
                                                       Telephone: (302) 729-9100
**ACOCELLI LAW, PLLC**                                 Email: BDLong@longlawde.com
Richard A. Acocelli
33 Flying Point Road, Suite 131                        *Attorneys for Plaintiff*
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com